IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DR. ELIZABETH SIMONSON | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| COASTAL BEND COLLEGE | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF DR. ELIZABETH SIMONSON'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Dr. Elizabeth Simonson, complaining of the actions of Coastal Bend College, and in support thereof, would respectfully show the Court as follows:

### I.      Parties

1.1     Plaintiff Dr. Elizabeth Simonson ("Simonson" or "Plaintiff") is a citizen of the United States and resides in Dinero, Live Oak County, Texas.

1.2     Defendant Coastal Bend College ("CBC" or "Defendant") is a public community college organized and existing pursuant to the laws of the State of Texas for the purpose of operating a community college in and around Bee County, Texas. The address of its administrative offices is 3800 Charco Road, Beeville, Bee County, Texas 78102, and Defendant may be served with process by serving its President, Dr. Beatriz Espinoza, at the foregoing address.

### II.      Jurisdiction and Venue

2.1     This Court has jurisdiction over this matter pursuant to the United States Constitution, particularly the First and Fourteenth Amendments and under federal statutory law, particularly, 42 U.S.C. §§ 1983 and 1988.

2.2     This Court is vested with original jurisdiction over these claims by operation of 28 U.S.C. §§ 1331.

2.3     This Court has in personam jurisdiction over Defendant because it is a governmental entity located in the State of Texas.

2.4     This Court has pendent jurisdiction over the state law claims asserted by Plaintiff herein, including those asserted under Section 554.002 of the Texas Government Code.

2.5     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Defendant is located and it is the judicial district in which substantial part of the events or omissions giving rise to the claims occurred.

2.6     Additionally, an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, and this Court is, therefore, vested with the power in the instant case to declare and adjudicate the legality and/or constitutionality of certain rules and regulations of Coastal Bend College, as adopted, applied, and/or interpreted by Coastal Bend College.

### III.     Factual Background

3.1     Simonson has been employed at CBC for eighteen (18) years in various roles within the department of Computer Information Technology. Simonson has a written employment contract with CBC.  Furthermore, Simonson has been diagnosed with and suffers from Attention Deficit Disorder ("ADD").

3.2     As a result of her disability, Simonson had previously requested and been granted reasonable accommodations by CBC. For the last fifteen (15) years CBC has provided Simonson in one form or another reasonable accommodation with a clerical and/or lab assistant.  For the past seven years, Simonson has been provided a lab manager and assistant(s) to facilitate the extensive lab hours required by the Robotics Computer Science curriculum and to assist with the necessary

Institutional Effectiveness and other record keeping.  Further, Simonson had been provided an office located in a more secluded part of the CIT Building in order to accommodate her disability while still being available for her students.

3.3     In or around 2014, Simonson in her role as Faculty Senate Secretary, provided Dr. Espinoza a list of Faculty Concerns including the hiring of Julia Garcia ("Garcia") as the Dean of Workforce Training.  Specifically, Simonson raised the faculty concerns about potential nepotism and conflicts of interest to President Espinoza, President of CBC ("Espinoza"). Espinoza is the sister of Garcia.  The faculty was concerned that Espinoza hired Garcia solely because she was a relative and that the hiring might not have been in the best interest of CBC by creating an inherent conflict of interest. Garcia was hired by Espinoza as the Dean of Workforce Training. Garcia was one of the direct supervisors of Simonson.

3.4     Additionally in Simonson's role as Faculty Senator and member of the Faculty Senate Budget Committee, she presented a budget trend study to president Espinoza, and formerly requested to present the trend study to the CBC Board of Trustees.  A request to present to the board was pro forma, as the Faculty Senate traditionally had unrestricted access to make such presentations to the Board.  However Dr. Espinoza summarily denied the request.

3.5     After raising these concerns with CBC, Simonson began to be targeted by both Espinoza and Garcia.  Specifically, Garcia encouraged Simonson's series of direct supervisors to find fault with her performance.  When the supervisor failed to find adequate grounds to take disciplinary action, Garcia appointed a new supervisor.  The pattern of retaliation continued and escalated under Garcia.  Garcia asked Donna Atkins, Division Chair and Simonson's direct supervisor/evaluator to "reconsider" her recommendation to offer Simonson an employment contract in 2014. Garcia directed Jack Young, Simonson's Coordinator who did her evaluations in

2015 and 2016, to withhold Simonson's evaluation in 2015, until Garcia could decide "what she wanted Simonson's evaluation to say". However, Young had already given Simonson a copy of her evaluation which rated her as outstanding. In spring 2016, Garcia directed Young to rate all his subordinates below standard with "improvement required." Garcia removed one of Mr. Young's five subordinates, Mrs. Lupita Ramirez, and had her evaluation rated highly which was performed by a different staff member. Mr. Young was not aware that the subordinate was being removed from him and he had prepared an evaluation for Ramirez as "improvement required." Espinoza and Garcia explained at a faculty training session that the board of trustees directed them to give poor evaluations and terminate problem employees.

3.6     Simonson was informed that she would no longer be able to teach the Business Computer Information Systems class ("BCIS") at CBC as part of her teaching load in September 2017. BCIS1305 is a Computer Science Class, and Simonson was the only remaining fulltime Computer Science Professor at CBC.

3.7     As the only qualified faculty member, it fell to Simonson to monitor and adjust the computer science curriculum. Simonson raised these concerns to her supervisor(s) and ultimately to the VP of instruction, Todd Ecklund ("Ecklund"). Ecklund informed Simonson that President Espinoza and Dean Garcia were not retaliating but were simply ensuring that all faculty made their "teaching load" in their discipline. Further, Ecklund incorrectly identified BCIS 1305 as a Business course. Simonson demonstrated that BCIS 1305 was a computer science class, and thus in her discipline, which Ecklund finally acknowledged. However, Ecklund continued to deny Simonson the ability to offer courses in BCIS1305 as part of her teaching load. Ecklund denied Simonson standing to monitor or effect changes in BCIS 1305 curriculum and determined the matter closed. For these reasons, Simonson filed a grievance with the CBC Board of Trustees

regarding the denial of being able to teach the BCIS1305 and requesting reinstatement of the responsibility to monitor BCIS 1305 as part of the computer science curriculum.

3.8    In early October 2016, Simonson was informed that Garcia had changed the requirements for BCIS1305 in the middle of the semester in question (fall), specifically to remove certain items from the curriculum and assessment of the course to make it easier. The elements being removed by Garcia were required by the State of Texas for BCIS 1305 to meet transfer requirements. Garcia's actions jeopardized the ability of approximately 300 CBC students to receive transfer credit for the course during that semester. In doing so, students could have been prevented from graduating or from transferring these credits to a four-year institution.

3.9    Simonson was concerned with the well-being of the CBC students. As the CBC VP of Instruction, Dr. Ecklund, denied Simonson's standing to affect BCIS 1305 curriculum on October 5, 2016, and thus removing it from the scope of Simonson's employment. Simonson felt obligated to bring this serious issue to the attention of the accrediting agency of CBC, the Southern Association of Colleges and Schools Commission on Colleges ("SACSCOC"). Simonson acted outside the scope of her employment and outside her official duties with CBC, in order to protect the interest of the students of CBC. Specifically, Simonson filed a complaint with SACSCOC concerning Garcia's actions in the alteration of the curriculum. SACSCOC, as the CBC accrediting agency has standing to address the issues raised by Simonson. Colleges are required to join a sanctioned accrediting body by the Department of Education in order to qualify for federal financing. Thus SACSCOC is a regulatory entity sanctioned and reviewed by the U.S. Department of Education.

3.10    In October 2016, Simonson filed a complaint to SACSCOC ("SACSCOC Complaint") regarding Garcia's actions. In doing so Simonson was not acting in her official

capacity as a computer science professor when she filed the SACSCOC Complaint, but as a public citizen concerned for the well-being of the students at CBC. Furthermore, Simonson is a professor at CBC and her official duties do not include any duties related to contacting and/or dealing with SACSCOC.

3.11    Prior to filing the SACSCOC Complaint, Simonson had been directed to move from her office of 15 years, which had served as a reasonable accommodation for Simonson's disability. After being directed to move, Simonson requested to have her reasonable accommodation restored to her supervisor, Jared Bleibdrey. Eventually, CBC responded to Simonson's request to Bleibdrey for accommodation of her office reassignment, Simonson was informed that CBC had lost all documentation related to her disability and her need for reasonable accommodation. Therefore, CBC required that Simonson submit a letter from her doctor confirming her disability, along with an accommodation request form. Simonson complied with this request, and assumed her response was sufficient as she never heard back from CBC.  Simonson continued to receive the previously provided reasonable accommodations.

3.12    In or around February 20, 2017, Simonson was informed by SACSCOC that her SACSCOC Complaint had "sufficient substance to warrant further review".  In or around February 18, 2017, SACSCOC informed CBC of the SACSCOC Complaint. Almost simultaneously upon being notified of the SACSCOC Complaint, both Espinoza and Garcia escalated their targeting and retaliation against Simonson.

3.13    On February 27, 2017, only nine days after CBC was informed of the SACSCOC Complaint, Simonson was for the first time informed that her request for reasonable accommodation would not be granted, even though CBC had provided reasonable accommodation for Simonson for the last fifteen (15) years. CBC requested a second letter from Simonson's doctor

to evaluate her claim.  CBC terminated her Lab Manager at the end of the spring 2017 semester, citing economic reasons.  Simonson's program was adversely impacted compared to the other workforce programs with similar lab requirements, revenues and expenses.

3.14    On March 2nd 2017, Simonson attended an optional meeting. On March 8th 2017, Simonson was called into a meeting with her new supervisor, Naomi Aguilar. The supervisor informed Simonson that she had been written up for falsifying college documents. This write up was entered into Simonson's CBC employment record.  Agular did not interview Simonson prior to the written reprimand. Acting on Espinoza's direct instruction, Aguilar wrote that Simonson had signed into the meeting and then left the meeting without attending. In fact, Simonson had entered the meeting, left when called out by a student, and returned.  She signed in after she returned and had witnesses that could substantiate her version of events.  When Simonson attempted to explain this to Aguilar, she was told that she was acting directly on Espinoza's orders, and just "doing what she was told." This written reprimand remains in Simonson's personnel file.

3.15    In April 2017, CBC cancelled all of Simonson's supply requisitions which were required for students' spring projects. Simonson went to Aguilar's office to ask about the cancellations. Simonson asked Aguilar's secretary where Aguilar was, and the secretary informed Simonson that she was at lunch. Shortly thereafter, Simonson was written up again and she was accused by Aguilar of yelling at the secretary. Further, the official write up accused Simonson of creating a hostile work environment. Aguilar solicited witnesses to the conversation but found the witnesses did not observe Simonson yelling or raising her voice.  Aguilar left the witness interviews out of her report. This is the second reprimand which remains in Simonson's personnel file. Once again, CBC's investigation did not interview Simonson to ask for her version of the

events. Simonson asked her supervisor why this was happening and the supervisor (Aguilar) stated that she was doing what she had been told to do presumably by Garcia.

3.16    In May at the last scheduled training for the Academic year, Bleibdrey directed Simonson and her coworker to leave the training and finish the Institutional Effectiveness report. Dean Garcia ran out of the building, yelling at Simonson, that she was going to "write you up for leaving the training." This write up presumably would have resulted in termination of Simonson's employment.  Simonson returned to the meeting, and was not 'written up." However others who failed to return were not written up.

3.17    Lastly, Simonson's concerns regarding the curriculum changes made by Espinoza were validated by Mr. Lohse, a CBC Board of Trustee member.  Lohse stated that policy and or procedure changes were required because of Simonson's complaint to SACSCOC at the June, 2017 Regular Called Board Meeting.

3.18    As a result of the filing of the SACSCOC Complaint, Simonson has suffered these adverse employment actions, including the removal of her reasonable accommodations and as a result of CBC actions alleged herein, Simonson brings the following causes of action against CBC.

## IV.    Causes of Action

4.1    <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative.

**A.    Count One:**

**Violation of 42 U.S.C. § 1983;**
**Violation of the United States Constitution,**
**Freedom of Speech:**
**First and Fourteenth Amendments.**

4.2    To the extent necessary, Paragraphs 1.1 through 3.18 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.3    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of her rights, privileges, and/or immunities secured under the United States Constitution.

4.4    Defendant deprived Plaintiff of her right to free speech – as secured by the First Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment.

4.5    Defendant deprived Plaintiff of her right to free speech by its retaliatory actions, adoption, and/or approval of such retaliatory actions.  Defendant deprived Plaintiff of her right to free speech by retaliating against her by taking adverse employment actions against her. Specifically, this was done by denying her request for her previously granted reasonable accommodations and removing the previously granted accommodations. Further, Defendant proceeded to make false allegations and reprimand Plaintiff based on these false allegations, in spite of clear evidence of the falsity of the allegations. Furthermore, these reprimands have included Plaintiff being written up, which means that the reprimands will be included in Plaintiff's employment records with Defendant.

4.6    Defendant's actions violate Plaintiff's right to free speech because such an adverse employment decisions were reached as a direct result of the SACSCOC Complaint, made by Plaintiff outside her general and/or direct chain of command and/or outside the course and scope of her normal duties as a professor at the college.  Further, the SACSCOC Complaint was a matter of public concern because it involved the well-being of the students at the college. Furthermore, these adverse actions occurred almost simultaneously with Defendant being informed of the SACSCOC Complaint. Clearly, the SACSCOC Complaint was a motivating factor in Defendant's

adverse actions against Plaintiff. Such conduct constitutes a violation of Plaintiff's First Amendment right to free speech.

4.7     As a result of the foregoing, Plaintiff has been damaged and hereby seeks to recover her damages resulting from said conduct by Defendant in an amount to be proven at trial.

4.8     As to claims for federal violations of free speech provided by the First Amendment, Plaintiff herein sues Defendant pursuant to 42 U.S.C. § 1983.  All of Defendant's conduct was under color of law.  Accordingly, Plaintiff seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages (including mental anguish and emotional distress damages), consequential and incidental damages, and any and all other equitable and compensatory relief which may be available under law and/or in equity.

4.9     These retaliatory and unconstitutional actions constitute the policy of Defendant and/or were made and/or ratified by the policymakers of Defendant, to whom final authority had been given by Defendant's Board of Trustees for the purpose of making such decisions. On information and belief, the Board of Trustees, as the ultimate policymaker of Defendant, accepted and/or ratified the actions complained of herein.

**B.     Count Two:**

### Violations of the Texas Whistleblower Act ("TWA")
### Tex. Gov't Code § 554.002

4.10    Plaintiff in good faith made SACSCOC Complaint reporting the actions of Espinoza. Upon information and belief, SACSCOC is the agency entrusted with regulating accreditation issues by the Department of Education, and as such is a governmental entity. The actions described above constitute adverse personnel actions against Plaintiff. Furthermore, Plaintiff initiated CBC's grievance procedures prior to filing this lawsuit but the grievance was

denied by Espinoza. Under Section 554.004 of the Texas Government Code, a presumption of retaliation exists because the adverse personnel actions taken against Plaintiff by Defendant were within ninety (90) days of the SACSCOC Complaint being brought to the attention of Defendant.

**C.    Count Three:**

**Violations of Chapter 21 of the Texas Labor Code:**
**Discrimination and Retaliation**

4.11    Plaintiff is not presently asserting a claim under Chapter 21 of the Texas Labor Code. Plaintiff has filed a complaint with the Texas Workforce Commission, and upon receipt of her "right to sue" letter, Plaintiff will amend her complaint and assert claims against Defendant for discrimination and retaliation.

**V.    Relief Requested**

5.1    As to claims for violations of the United States Constitution, Plaintiff seeks recovery of the full measure of relief and damages against Defendant, including, but not limited to, compensatory damages and/or nominal damages (including mental anguish and emotional distress damages), consequential and incidental damages, and any and all other equitable, injunctive and compensatory relief which may be available at law and/or in equity.

5.2    As to claims under the TWA, Plaintiff sues Defendant pursuant to Texas law and Section 554.002 of the Texas Government Code.  Plaintiff seeks recovery of any and all remedies afforded under Texas law, including Section 554.002 of the Texas Government Code, and/or under law and/or in equity, including, but not limited to, compensatory damages, consequential damages and incidental damages, attorneys' fees and any and all other compensatory and/or equitable relief which may be available to and/or recoverable by Plaintiff.

**VI.    Fees, Costs and Interest**

6.1    Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent her in connection with this matter, and has agreed to pay for such reasonable and necessary services.  In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover her reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §§ 1983, 1988(b) and/or Section 554.003 of the Texas Government Code.

6.2    Additionally, pursuant to 42 U.S.C. § 1988(c), Plaintiff seeks to recover any and all expert fees, which she incurs and/or may incur in bringing this suit.  Plaintiff also seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.    Jury Demand

7.1    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff Dr. Elizabeth Simonson prays that Defendant be cited to appear and answer, and that, upon final hearing, Plaintiff recover judgment against Defendant and be awarded:

(1)    any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant;

(2)    equitable relief to the extent permitted by law and/or in equity;

(3)    her litigation expenses and costs, including, but not limited to, her reasonable and necessary attorneys' fees and costs;

(4)    pre- and post-judgment interest at the maximum rate permitted by law;

(5)     costs of court; and

(6)     such other and further relief, general and/or special, at law or in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

**HILL GILSTRAP, P.C.**

s/ Frank Hill
_____
Frank Hill                                09632000

1400 West Abram Street
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 (fax)
fhill@hillgilstrap.com

**ATTORNEY FOR PLAINTIFF**
**DR. ELIZABETH SIMONSON**